UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| | : | |
| v. | : | |
| | : | Mag. No.  14-5064 (TJB) |
| THEODORE SANTAGUIDA | : | |

I, Ronald Duce, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Ronald Duce
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
December 23, 2014 Trenton, New Jersey

HONORABLE TONIANNE J. BONGIOVANNI          _____
UNITED STATES MAGISTRATE JUDGE              Signature of Judicial Officer

RECEIVED
DEC 23 2014
TONIANNE J. BONGIOVANNI
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

### COUNT 1
**Distribution of a Controlled Substance**

On or about December 2, 2014, in Monmouth County, in the District of New Jersey and elsewhere, defendant THEODORE SANTAGUIDA did:

> knowingly and intentionally distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(C), and Title 18, United States Code, Section 2.

### COUNT 2
**Distribution of a Controlled Substance**

On or about December 12, 2014, in Monmouth County, in the District of New Jersey and elsewhere, defendant THEODORE SANTAGUIDA did:

> knowingly and intentionally distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(C), and Title 18, United States Code, Section 2.

## ATTACHMENT B

I, Ronald Duce, am a Special Agent with the Federal Bureau of Investigation. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents and other items of evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. On or about November 21, 2014, a confidential source ("CS-1") advised law enforcement agents that "Teddy," later identified as defendant THEODORE SANTAGUIDA, who resides in Ocean Township, New Jersey, had been distributing large quantities of methamphetamine and gamma-hydroxybutyric acid ("GHB").

2. On or about December 2, 2014, SANTAGUIDA arranged CS-1 for SANTAGUIDA to sell an unspecified quantity of methamphetamine to CS-1. SANTAGUIDA and CS-1 agreed that the purchase would take place that evening at SANTAGUIDA's apartment in Ocean Township, New Jersey.

3. At approximately 8:00 p.m., CS-1, acting at the direction and under the surveillance of law enforcement, traveled to SANTAGUIDA's apartment in Ocean Township to purchase methamphetamine from SANTAGUIDA. Prior to this time, CS-1 had met with law enforcement, who searched CS-1 and CS-1's vehicle for illegal contraband and money (with negative results) and provided CS-1 with an audio/video recorder and $1,500 in cash to purchase methamphetamine from SANTAGUIDA.

4. At approximately 8:15 p.m., CS-1 arrived at SANTAGUIDA's building and entered the apartment. After CS-1 entered SANTAGUIDA's apartment, SANTAGUIDA and CS-1 discussed CS-1's purchasing narcotics. During this conversation, SANTAGUIDA weighed and packaged what appeared to be methamphetamine. SANTAGUIDA also explained that he was giving CS-1 a discount on the methamphetamine because CS-1 was buying a large amount. SANTAGUIDA poured the methamphetamine into a clear plastic bag, which he handed to CS-1 in exchange for the $1,500 previously given to CS-1 by law enforcement agents.

5. The substance SANTAGUIDA sold to CS-1 weighed approximately 16.8 grams. The substance was subsequently field-tested and tested positive for the presence of methamphetamine.

6. On or about December 12, 2014, at approximately 3:40 p.m., SANTAGUIDA and CS-1 arranged for CS-1 to come to SANTAGUIDA's apartment to buy methamphetamine.

7. At approximately 3:50 p.m., CS-1, acting at the direction and under the surveillance of law enforcement, traveled to SANTAGUIDA's apartment. Prior to this time, CS-1 had met with law enforcement, who searched CS-1 and CS-1's vehicle for illegal contraband and money (with negative results) and provided CS-1 with an audio/video recorder and $750 in cash to purchase methamphetamine from SANTAGUIDA.

8. At approximately 3:58 p.m., CS-1 entered SANTAGUIDA's apartment. During this meeting, SANTAGUIDA retrieved a square container of methamphetamine from the kitchen. SANTAGUIDA described the amount of methamphetamine he would be providing CS-1 that day as being "slightly less than an eight ball."

9. SANTAGUIDA then weighed and packaged the methamphetamine in two separate clear plastic bags, and handed them to CS-1, who handed SANTAGUIDA the $750 previously provided to him by law enforcement agents.

10. The substance SANTAGUIDA sold to CS-1 weighed approximately 7.4 grams. The substance was subsequently field-tested and tested positive for the presence of methamphetamine.

11. On or about December 23, 2014, a search of SANTAGUIDA's apartment was conducted pursuant to a search warrant. The search revealed the presence of approximately 300 grams of methamphetamine, approximately $11,500 in cash, and approximately 15 bottles containing an undetermined quantity of suspected GHB.